**FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOAN IVAN and<br>ANGEL JAZIKOFF, | : | |
| | : | **OPINION AND ORDER** |
| Plaintiffs, | : | |
| | : | Civil Action No. 03-1703 (WHW) |
| v. | : | |
| | : | |
| COUNTY OF MIDDLESEX; MIDDLESEX<br>COUNTY SHERIFF'S DEPARTMENT;<br>SHERIFF JOSEPH C. SPICUZZO,<br>individually and in his official capacity as<br>Sheriff of the Middlesex County Sheriff's<br>Department; UNDERSHERIFF ANGELO<br>FALCONE, individually and in his official<br>capacity as Sheriff's Officer of the Middlesex<br>County Sheriff's Department; LIEUTENANT<br>DONALD BLOUNT, individually and in his<br>official capacity as Sheriff's Officer of the<br>Middlesex County Sheriff's Department;<br>SERGEANT BRUCE ALLEN, individually<br>and in his official capacity as Sheriff's Officer<br>of the Middlesex County Sheriff's<br>Department; OFFICER ROBERT LANDIS,<br>individually and in his official capacity as<br>Sheriff's Officer of the Middlesex County<br>Sheriff's Department; OFFICER<br>ALEXANDER PEPENELLA, individually<br>and in his official capacity as Sheriff's Officer<br>of the Middlesex County Sheriff's<br>Department and JOHN DOES 1-10 (fictitious<br>names) individually and in their official<br>capacities as Sheriff's Officers of the<br>Middlesex County Sheriff's Department | : | |
| Defendants. | : | |

**FOR PUBLICATION**

<u>**Walls, Senior District Judge**</u>

      Defendants Lieutenant Donald Blount, Sheriff Joseph Spicuzzo, Undersheriff Angelo Falcone and Sergeant Bruce Allen move for reconsideration of this Court's denial of defendants' motion for summary judgment. The motion is denied.

      **FACTS AND PROCEDURAL BACKGROUND**

      On January 21, 2009, this Court denied in part defendants' motion for summary judgment. <u>See</u> <u>Ivan v. County of Middlesex</u>, 595 F. Supp. 2d 425 (D.N.J. 2009). Defendants now move for reconsideration of portions of the Court's decision based on <u>Cicchetti v. Morris County Sheriff's Office</u>, 194 N.J. 563, 947 A.2d 626 (2008), a case decided by the New Jersey Supreme Court after the parties had completed briefing of defendants' motion for summary judgment. Defendants ask the Court to revisit two of plaintiffs' claims: (i) aiding and abetting violations of the New Jersey Law Against Discrimination ("LAD") at Counts 5 & 6; and (ii) violations of equal protection at Counts 9 & 10. Defendants Allen, Falcone and Spicuzzo join defendant Blount's motion but do not offer any argument specific to their respective liability. (<u>See</u> Dkt. Entry Nos. 162, 164-65.).

      A comprehensive discussion of the facts can be found in the earlier Opinion, where the Court detailed the allegations against defendant Blount:

> ... Blount's alleged harassment involved a series of inappropriate comments while he was Jazikoff's supervisor. On March 3, 2003, Blount told Jazikoff she was "going to be fucked all night long." (Second Am. Compl. ¶ 46.) Blount would often ask if Jazikoff's mood was because "she was on the rag" or if it was "that time of the month" and once noted that his ATM PIN number was 6969, apparent reference to the sexual connotation of "69." (Nulty Cert., Ex. J, Jazikoff Dep. 1810:6-12; 1819:24-1821:3.) On another occasion, when Jazikoff was in street clothes, Blount made comments similar to "Oh my

FOR PUBLICATION

God, you look different out of uniform" and "Your ass looks great in those jeans." (Nulty Cert., Ex. K at ¶ 11.)

Blount also enlisted his authority as Jazikoff's supervisor in his harassment. Once during roll call, Blount ordered Jazikoff to turn around in front of him. (Nulty Cert., Ex. K at ¶ 3.) Other officers were not asked to do the same. (Nulty Cert., Ex. L, Martin Dep. 32:17-34:23; Ex. M, Mayo Dep. 29:3-31:16.) On another occasion, several male officers were looking at magazine depicting, in Jazikoff's words, "provocatively dressed" women. One of the officers asked Blount which one he would "pick." Blount queried in response, "which one looks most like Jazikoff?" (Nulty Cert., Ex. K at ¶ 22; Ex. J, Jazikoff Dep. 797:18 to 798:20.) A few minutes later Blount, claiming to have read the County's sexual harassment policy, said he realized that he was not allowed to say that and amended his comment, "that's not Jazikoff, that's her twin sister." (Nulty Cert., Ex. K at ¶ 22; Ex. J, 802:10 to 805:7.) Finally, while conducting instruction in weapon maintenance, as he applied oil to the barrel of a gun, Blount said "this is the way you have to do it," and "you have to jerk it off hard." (Nulty Cert., Ex. K at ¶ 27.)

Ivan, supra at 442.

When Jazikoff complained to Blount about harassment by other members of the Department, Blount's behavior evinced indifference. Specifically, "[i]n response to Jazikoff's complaints about [harassment by sheriff's officer Landis], Blount said that he was not surprised but that Jazikoff should just ignore it, waiving off the behavior as 'Buzzy [Landis] being Buzzy.'" Id. "In answer to Jazikoff's complaints [about Officer Pepennella], Blount acknowledged that he had expected Pepenella to harass Ivan." Id. at 443.

Although defendants fail to make any arguments specifically addressing defendants Spicuzzo, Falcone and Allen, plaintiffs highlight several incidents in the record involving these defendants that may form the basis of aiding and abetting liability. With respect to Spicuzzo and Falcone, plaintiffs claim that: (i) it is reasonable to infer from their respective positions of authority that each knew of the LAD violations and that their failure to address such violations emboldened other violations; (ii) each supervisor not only promulgated gender-based policies,

-3-

**FOR PUBLICATION**

procedures and customs but acknowledged that such gender-based policies affected female employees; (iii) Spicuzzo and Falcone reassigned Jazikoff to avoid her attendance at the military birthday party, thereby aiding Allen's harassment of Ivan and then failed to punish Allen even after a clear determination that Allen had violated the LAD; and (iv) Falcone berated Jazikoff when she complained of harassment, specifically mentioning that Spicuzzo would be "upset" that Jazikoff had complained.  Plaintiffs concede that evidence of Allen's aiding and abetting is less direct but assert that Allen's discriminatory statements emboldened other discriminatory behavior and that Allen must have been aware of the proliferation of sexual materials in the Department.

This Court detailed Allen's behavior:

> Ivan was hired in January of 1999 and served as a sheriff's officer until her termination on October 14, 2003.  Allen was a sergeant in the Department and, for a time, Ivan's direct supervisor.  Allen's harassment often took the form of verbal abuse.  Between August and November of 1999 Allen on several occasions, upon observing Ivan smoking on her break, commented as to how "disgusting" Ivan looked, (Certification of John P. Nulty, Jr. (Dkt. No. 150 (filed Apr. 15, 2008)) ("Nulty Cert."), Ex. C, Ivan Dep. 89:6 to 89:13., Dec. 8, 2004.), and requested that she wear her hair up.  (Certification of Patrick J. Bradshaw ("Bradshaw Cert."), Ex. I, Ivan Dep. 83:18-84:5.)  Although County procedures did require hair to be "neat and clean," (Bradshaw Cert., Ex. I, Ivan Dep. 84:16-21.), Allen added that it was "no wonder [Ivan did not] have a date."  (Nulty Cert., Ex. C, Ivan Dep. 92:11 to 92:24.)  Ivan never reported these incidents.  Another sheriff's officer testified that Allen, in the presence of Ivan, said that Ivan needed a "good stiff fucking," was "sucking her way to the top" and commented that females were useless and had no place in the department.  (Nulty Cert., Ex. E, Netta Dep. 44:45-46:15; 48:18-19.)
>
> On November 3, 1999, Ivan expressed interest in attending a military birthday party for veterans who served in the Department.  Allen grumbled, "[I] forgot they allow bimbos in the Navy now."  Notwithstanding this missive, Ivan insisted that she planned to attend. In response, Allen asserted, "Mark my words.  No, you will not."  (Nulty Cert., Ex. C, Ivan Dep. 113:21 to 121:14.)  Ivan reported this incident to Sgt. Orpen and Lt. Sathan but was advised to simply try to ignore it. (Nulty Cert., Ex. G at ¶¶ 3-4.)  On the morning of the party, Ivan was transferred to Transportation Division and Allen chided, "... told you you're not going to be here." (Nulty Cert., Ex. C, Ivan Dep. 116:9-117:8.)

FOR PUBLICATION

<u>Ivan</u> at  441.

**LEGAL STANDARD**

The standard for a motion for reconsideration is an exacting one.  Fed. R. Civ. P. 59(e)

allows a litigant to move to alter or amend a judgment within ten days of its entry.  <u>See</u> Fed. R.

Civ. P. 59(e).  Similarly, the Local Rules allow a party to seek a motion for reconsideration if the

party believes the judge has overlooked certain matters or controlling decisions in rendering the

original decision.  <u>See</u> L. Civ. R. 7.1(i).  The Third Circuit has held that the "purpose of a motion

for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered

evidence."  <u>Max's Seafood Cafe, by Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir.

1999) (quoting <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)).  A reconsideration

motion, however, "may not be used to relitigate old matters, or to raise arguments or present

evidence that could have been raised" before a judgment has been entered.  <u>See</u> Charles A.

Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2810.1 (internal

citations omitted).  "A party seeking reconsideration must show more than a disagreement with

the Court's decision, and recapitulation of the cases and arguments considered by the court

before rendering its original decision fails to carry the moving party's burden."  <u>Gutierrez v.</u>

<u>Ashcroft</u>, 289 F. Supp. 2d 555, 561 (D.N.J. 2003) <u>aff'd</u>, <u>Gutierrez v. Gonzales</u>, 125 Fed. Appx.

406 (3d Cir. 2005) (quoting <u>G-69 v. Degnan</u>, 748 F. Supp. 274, 275 (D.N.J. 1990)).  Such

motions will only be granted where (1) an intervening change in the law has occurred; (2) new

evidence not previously available has emerged; or (3) the need to correct a clear error of law or

prevent a manifest injustice has arisen.  <u>See</u> <u>North River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52

FOR PUBLICATION

F.3d 1194, 1218 (3d Cir. 1995).  Because reconsideration of a decision after its entry is an

extraordinary remedy, requests pursuant to these rules are to be granted "very sparingly,"

Yurecko v. Port Auth. Trans-Hudson Corp. 279 F. Supp. 2d 606, 608 (D.N.J. 2003); see also NL

Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996), and only when

"dispositive factual matters or controlling decisions of law" were brought to the court's attention

but not considered.  Yurecko, 279 F. Supp. 2d at 609; see also Pelham v. United States, 661 F.

Supp. 1063, 1065 (D.N.J. 1987).

####     DISCUSSION

     Defendants neither introduce new evidence nor assert a clear error of law by the Court.

Defendants' argument rests entirely on Cicchetti v. Morris County Sheriff's Office 194 N.J. 563,

947 A.2d 626 (2008).  So, only to the extent that Cicchetti works an intervening change in law

will the Court entertain defendants' motion for reconsideration.  While the Court does not find

that Cicchetti constitutes an intervening change of law, even if it did, the record still supports

aiding and abetting liability.

     In Cicchetti, Morris County sheriff's officer Cicchetti alleged that he had been subjected

to unlawful harassment after his positive test result for hepatitis was revealed to his co-workers.

Cicchetti filed a complaint in state court against the Sheriff's Office and, individually, the

Sheriff, Undersheriff and several other sheriff's officers.  Cicchetti, supra at 569-72.  Cicchetti

grounded his complaint in the Law Against Discrimination (the "LAD"), which prohibits, among

other things, aiding and abetting LAD violations.  See N.J. Stat. Ann. § 10:5-12 et seq.  Cicchetti

alleged that the Sheriff and Undersheriff were liable for "failing to act on his complaints and for

FOR PUBLICATION

permitting the harassment to continue," <u>Cicchetti</u>, <u>supra</u> at 572, and that two of his fellow

employees were also liable as aiders and abettors.  <u>See</u> <u>id.</u>

The trial court reasoned that the defendants could not be liable for aiding and abetting

their own conduct and dismissed Cicchetti's case.  <u>See</u> <u>id.</u> at 573.  The Appellate Division

affirmed with regard to Cicchetti's co-workers, concluding that the co-employees could not be

liable, but reversed with regard to the Sheriff and Undersheriff, holding that they could be held

liable for aiding and abetting based on the inadequacy of their remedial actions.  <u>See</u> <u>id.</u> at 573-

74.

In reviewing the Appellate Division's decision, the New Jersey Supreme Court closely

examined its earlier opinion, <u>Lehmann v. Toys 'R' Us, Inc.</u>, 132 N.J. 587, 626 A.2d 445 (1993),

the seminal interpretation of the scope of employer liability under the LAD.  The <u>Cicchetti</u> court

noted that although <u>Lehmann</u> "focused on the work environment and the liability to be attributed

to an employer," it did not "conclude, and [] did not contemplate, that the supervisor could be

personally liable for his or her acts or failure to act."  <u>Cicchetti</u> at 592.  The <u>Cicchetti</u> court

clarified that, although <u>Lehmann</u> did impart significance upon the acts of supervisors, <u>Lehmann</u>

had not considered individual liability for aiding and abetting under the LAD.  <u>See</u> <u>id.</u>  To refine

the relevance under the LAD of the acts of a supervisor, the <u>Cicchetti</u> court enumerated the

circumstances under which a supervisor's acts hold import.  <u>See</u> <u>id.</u> at 591-94.  (discussing

<u>Lehmann</u>; <u>Payton v. N.J. Tpk. Auth</u>, 148 N.J. 524, 537, 691 A.2d 321 (1997) ("efficacy of an

employer's remedial program is highly relevant to both an employee's claim against the

employer and the employer's defense to liability"); <u>Taylor v. Metzger</u>, 152 N.J. 490, 503, 706

FOR PUBLICATION

A.2d 685 (1998) (discriminatory comments made by supervisor were more severe because "supervisor has a unique role in shaping the work environment"); Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 116-29, 735 A.2d 548 (1999) (acts of supervisors have import in the context of punitive damages)). According to the Cicchetti court, however, "the supervisor's part in the analysis was only that of the one whose acts or failings could be attributed to the employer for liability purposes." Id. at 594.

At best, the Cicchetti court clarified that Lehmann "did not conclude that the supervisor could be individually liable for his or her acts *apart from* an aiding and abetting analysis." Id. (emphasis added). "[T]he words aiding and abetting 'require active and purposeful conduct.'" Id. (quoting Tarr v. Ciasulli, 181 N.J. 70, 83, 853 A.2d 921 (2004)). For a defendant to be liable for aiding and abetting, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal and tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." Id. (quoting Tarr at 84).

Because the Appellate Division had failed to determine any basis for the Sheriff and Undersheriff's aiding and abetting liability, the Cicchetti court could "only conclude that the [Appellate Division] confused the significance of a supervisor's act as a basis for an employer's liability with the significance of those same acts for purposes of the supervisor's individual liability." Id. at 595. Because the acts and failures to act of the Sheriff and Undersheriff fell "well short of the 'active and purposeful conduct'" needed to support aiding and abetting

FOR PUBLICATION

liability, the Cicchetti court granted summary judgment on Cicchetti's aiding and abetting claims. Id. at 595.

In Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999), the Third Circuit observed that under certain circumstances a supervisor may be liable for aiding and abetting his or her own conduct.  According to defendants Cicchetti rejects this theory.  Under defendants' reading of Cicchetti, simply that a defendant committed an act of discrimination at the time such defendant was a supervisor is not enough to constitute aiding and abetting.  A supervisor still must aid someone to "perform a wrongful act that causes an injury; ... be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] ... knowingly and substantially assist the principal violation." Cicchetti, supra at 594 (quoting Tarr at 84 (quoting Hurley 174 F.3d at 127)).  Applying Tarr, defendants argue Blount cannot be liable for aiding and abetting because he did not engage in any "active and purposeful conduct" which aided another party in wrongful act;[1] and the record contains no evidence Blount was "generally aware" of his role nor evidence that Blount "knowingly and substantially assisted" the principal violation.  As noted earlier, defendants Spicuzzo, Falcone and Allen have not asserted any arguments specific to their individual liability.

---

[1]Defendants also suggest that Cicchetti makes clear that one cannot aid and abet one's own acts.  The Cicchetti court did not so conclude.  The Third Circuit in Hurley explained this "somewhat awkward" theory of liability, which imposes liability on a supervisor for his own violations of the LAD, on the basis of the supervisor's duty to act against harassment.  See Hurley, 174 F.3d at 126 (citing Taylor, supra 706 A.2d at 691).  Such duty can be violated by deliberate indifference or affirmatively harassing acts.  "When a supervisor flouts this duty, he subjects himself and his employer to liability."  Id. at 126 (citing Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 134 A.2d 761 (1957)).  That the Cicchetti court cited Hurley for the aiding and abetting standard without expressly rejecting this theory seriously weakens defendants' position and demonstrates that this theory of liability remains.

FOR PUBLICATION

Plaintiffs do not contest that the Tarr standard applies to supervisors.  They do contend that there is ample evidence that the actions of Blount, Spicuzzo, Falcone and Allen meet the test.  With respect to Blount, plaintiffs advance the cookie incident, gun cleaning incident, magazine incident and roll call incident; Blount's "continuing torrent of offensive and degrading comments about women in general"  (Pls.' Opp'n 2.); and Blount's failure to respond to Jazikoff's complaints about Landis and his acknowledgment that he anticipated harassment by Pepenella.

Even without considering Blount's alleged individual violations of the LAD, a reasonable jury could find Blount liable for aiding and abetting because he was willful in failing to act in response to Jazikoff's complaints regarding her fellow officers.   When Jazikoff twice complained regarding the harassment, Blount expressed little surprise that harassment had occurred and offered no remedy in response. (See Opinion at 8-9.)  If the aiding and abetting prohibition is to have any effect at all it must prohibit such willful indifference to violations of the LAD.  That aiding and abetting liability can only be applied to supervisors, and not to co-employees, See Tyson v. CIGNA Corp., 918 F. Supp. 836, 839-40, n.4 (D.N.J. 1996), further confirms that the aiding and abetting provisions are intended to assure that violations of the LAD are appropriately remedied.  Similarly, defendant Falcone could be found liable for aiding and abetting because he berated Jazikoff when she complained of harassment.  And a reasonable juror could infer, from all of the circumstances, and specifically from Falcone's admonition to Jazikoff that Spicuzzo would be upset that she had complained, that Spicuzzo aided and abetted a violation of the LAD by willfully failing to respond.  Spicuzzo's failure to punish Allen, even after a clear determination that he had violated the LAD, only bolsters this inference more.

-10-

FOR PUBLICATION

The Court is mindful of the Cicchetti court's conclusion that the acts and failures to act of Cicchetti's supervisors fell "well short of the 'active and purposeful conduct' ... required to constitute aiding and abetting for purposes of their individual liability," Cicchetti, supra at 595, but the factual circumstances of Cicchetti are different from those here. As defendants observe, Cicchetti claimed "nothing was done to address his complaints." Id. at 571. However, the Cicchetti court made no mention of any statements made by Cicchetti's superiors that resemble the willful indifference that Blount exhibited, nor the hostility of Spicuzzo and Falcone to complaints. See Ivan at 464 (discussing failures of Spicuzzo to impose discipline for violations of the LAD, as well as threatening statements by Falcone in response to discrimination complaints). Nor does it appear that Cicchetti's supervisors were unresponsive. After hearing Cicchetti's complaints not only did his supervisors advise him to file a formal report, See Cicchetti at 570, but the Undersheriff also spoke directly with the officers who allegedly harassed Cicchetti. See id. at 571. That the supervisors were ultimately unsuccessful in stopping the harassment does not change the fact that, unlike Blount, Spicuzzo and Falcone, Cicchetti's supervisors not only did not discourage Cicchetti's complaints but also made attempts to remedy the violations.

Based on the direct evidence along with the reasonable inferences that follow, a fact finder could reasonably conclude that Blount, Falcone and Spicuzzo each aided violations of the LAD, that each was "generally aware of his role as part of the" LAD violations at the time the assistance occurred and engaged in "active and purposeful conduct" that knowingly and substantially assisted the LAD violations.

FOR PUBLICATION

With regard to Allen, the record includes direct evidence of only two potential acts of aiding and abetting: Allen's own discriminatory statements and acts and the proliferation of sexual materials in the Department. In contrast to Blount, there are no allegations that plaintiffs complained to Allen about harassment and he refused to respond. Plaintiffs argue that it is reasonable to infer two additional facts from the record: first, that Allen's comments emboldened acts of harassment by other members of the Department; and second, that Allen must have been aware of the proliferation of sexual materials and was willful in failing to respond. Evidence of the proliferation of sexual materials in the department is insufficient alone to demonstrate active and purposeful conduct. Even if Allen were aware of the proliferation of materials, there is no evidence that he failed to take any remedial steps in response to complaints about the same. However, a reasonable juror could conclude that Allen used his position as supervisor to further his own acts of discrimination and that comments by Allen, made in the presence of other officers, at official Department functions, emboldened other acts of discrimination. In particular, Allen's comments surrounding the military birthday party were made at official roll call, where other members of the Department could not only see LAD violations committed by a supervisor but also official inaction in response. (See Opinion at 3-4.) Moreover, Ivan's resultant transfer suggests that Allen exercised his authority as a supervisor to implement his discrimination. The order of events would allow a reasonable juror to conclude that Allen was liable for aiding and abetting because he discriminated against Ivan with respect to the military birthday party, later engaged in active and purposeful conduct that knowingly and substantially assisted his discrimination by orchestrating her transfer to another unit and, because he both committed the

FOR PUBLICATION

original act of discrimination as well as orchestrated the transfer, was "generally aware of his role as part of" this violation at the time the assistance occurred.

*Equal Protection*

Defendants also ask that the Court reconsider its denial of defendants' motion for summary judgment on plaintiffs' equal protection claims at Counts 9 and 10.  Defendants argue only that "since this Court should find that there is no aiding and abetting liability as to Blount simply because he is a supervisor, ... Blount is similarly not liable for a constitutional violation of equal protection."  (Def.'s Supp. 8.)  As plaintiffs aptly observe, defendants cite no authority for this proposition and offer no reasoning as to why the Court should accept such a conclusion.  The standard for individual liability for a violation of equal protection is distinct from the standard for LAD aiding and abetting liability, although the two standards do bear some similarity.  Individual equal protection liability requires personal, affirmative involvement of the defendant in the alleged wrongdoing.  Ivan at 479 (citing C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005)); see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006).)  But, as this Court noted in its earlier opinion, a "harasser's supervisor may be held liable if the supervisor had knowledge of the harassment and acquiesced in his or her subordinates' wrongful acts."  Ivan at 480 (citing Andrews v. City of Philadephia, 895 F.2d 1469,1478-79 (3d Cir. 1990)).

That acquiescence alone could support liability under § 1983 suggests that § 1983 imposes a lesser standard than the LAD.  Be that as it may, the particulars of the respective standards are irrelevant because the current posture is a motion for reconsideration.  Defendants

**FOR PUBLICATION**

must demonstrate that (1) an intervening change in law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice has arisen.  See North River Ins. Co., 52 F.3d at 1218.  The respective standards under § 1983 and the LAD differ.  Cicchetti does not disturb the equal protection standard.  No new evidence has emerged.  Defendants have not raised an error of law or fact.  It follows then that the motion for reconsideration is denied.

IT IS on this 6th day of May 2009,

ORDERED that defendants' motions are DENIED.

The Clerk is directed to close defendants' motions.  (Dkt. Entry Nos. 162-65.)


s/William H. Walls
United States Senior District Judge


**Appearances**

Peter Ciolino, Esq.
Harwood Loyd
130 Main Street
Hackensack, NJ 07601
            Attorney for Mediator

Jeffrey G. Garrigan, Esq.
Cammarata, Nulty & Garrigan, L.L.C.
850 Bergen Avenue
Jersey City, NJ 07306
        -and-
John P. Nulty, Jr., Esq.
Cammarata, Nulty & Garrigan, Esqs.
850 Bergen Avenue
Jersey City, NJ 07306
            Attorneys for Plaintiffs Joan Ivan and Angel Jazikoff

Joseph V. Biancamano, Esq.

**FOR PUBLICATION**

Biancamano & Di Stefano
Executive Plaza
10 Parsonage Road
Suite 212
Edison, NJ 08837
     -and-
Patrick J. Bradshaw, Esq.
Kelso & Bradshaw, Esqs.
132 Hamilton Street
Po Box 1208
New Brunswick, NJ 08903
     -and-
Lawrence F. Citro, Esq.
Biancamano & Di Stefano, Pc
10 Parsonage Road
Suite 212
Edison, NJ 08837
     Attorneys for Defendants Count of Middlesex, Middlesex County Sheriff's Department

Craig L. Corson, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, Llp
40 Paterson Street
Po Box 480
New Brunswick, NJ 08903
     Attorney for Defendant Undersheriff Angelo Falcone

Lori A. Dvorak, Esq.
Dvorak & Associates, Llc
390 George Street
8th Floor
New Brunswick, NJ 08901
     -and-
Marc D. Mory, Esq.
Dvorak & Associates, Llc
390 George Street
8th Floor
New Brunswick, NJ 08901
     Attorney for Defendant Lieutenant Donald Blount
     -and-
Michael John Stone, Esq.
The Stone Law Group
20 Glenview Drive
Warren, NJ 07059

**FOR PUBLICATION**

Attorney for Defendant Sergeant Bruce Allen

Clark W. Convery, Esq.
Convery, Convery & Shihar
32 South Main
Edison, NJ 08837
Attorney for Defendant Officer Robert Landis

George A. Spadoro, Esq.
Wolff & Samson PC
Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
-and-
Keyana Capri Laws, Esq.
Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052
Attorneys for Defendant Officer Alexander Pepenella